UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTONIO SPEAKS,<br><br>     Plaintiff,<br><br>          v.<br><br>DISTRICT OF COLUMBIA,<br><br>     Defendants. | Civil Action No.  03-1965 (JDB) |

## MEMORANDUM OPINION

Plaintiff Antonio Speaks brings this action against the District of Columbia ("the District"), the Executive Assistant Chief of the Metropolitan Police Department ("MPD"), Michael Fitzgerald ("defendant Fitzgerald"), and Officer Keith Slaughter ("defendant Slaughter") (collectively "defendants") pursuant to 42 U.S.C. § 1983 and the common law of the District, seeking compensatory and punitive damages for various injuries allegedly suffered by plaintiff as a result of defendants' conduct in connection with his arrest on September 23, 2002.  Presently before the Court is the motion for summary judgment filed by defendants.  For the reasons that follow, the Court will grant the motion in part and deny it in part.

## BACKGROUND

On September 23, 2002 at approximately 6:30 p.m., plaintiff was driving a white Chevrolet on Kenyon Street in Washington, D.C., with three passengers:  his cousin Theodore Davis, his wife and then-fiancee Takeya Speaks, and an unidentified third occupant.  Amended Compl. at 3 ¶¶ 8, 9; Def.'s Mot. Summ. J. at 3.  Defendant Slaughter was on patrol in the area with

Officer Dwayne Mitchell. Def.'s Stmt. at 1 ¶ 1. Slaughter and Mitchell observed the white Chevrolet at a stoplight, and noticed that the vehicle did not have a front license plate and that the vehicle's left light was not in proper working order. Id.; Def.'s Mot. Summ. J. at 4. They activated their emergency light and siren in an effort to pull the vehicle over. Def.'s Stmt. at 1 ¶ 2; Def.'s Mot. Summ. J. at 4. Before plaintiff stopped his vehicle, he was observed leaning out of the window to dispose of a brown paper bag. Def.'s Mot. Summ. J. at 8. Officer Mitchell approached the driver's side of the vehicle, and plaintiff handed him his license. Def.'s Mot. Summ. J. at 4; Def.'s Stmt. at 2 ¶¶ 5, 10-12. Plaintiff was then asked to step out of the vehicle, at which time Officer Mitchell proceeded to pat him down and handcuff him. Def.'s Mot. Summ. J. at 9. Officer Mitchell left plaintiff in defendant Slaughter's charge while he ventured back toward the 400 block of Kenyon Street to retrieve the brown paper bag, which contained a gun. Def.'s Mot. Summ. J. at 9.

What transpired while Officer Mitchell was retrieving the paper bag is hotly contested between the parties and forms the heart of plaintiff's action. Plaintiff's version of the story paints a portrait of defendant Slaughter as an overly aggressive officer who clubbed plaintiff with his ASP baton -- without provocation -- and rendered him unconscious. According to plaintiff, he complied fully with the demands of Officer Mitchell and defendant Slaughter, and at no time resisted arrest (although he did inquire repeatedly as to the basis for his detention). Plaintiff accuses defendant Slaughter of repeatedly slamming him against the vehicle and twisting his previously-broken and improperly-healed arm into a painful position. Amended Compl. at 3 ¶¶ 10-12. Plaintiff further contends that without provocation, Slaughter struck him over the head with his ASP baton, causing him to bleed profusely and lose consciousness. Id. at ¶¶ 13, 15.

Plaintiff's fiancee then exited the vehicle in order to protect him from further abuse, yelling "no, no!" Id. at ¶ 15. Defendant Slaughter allegedly swung his ASP baton at plaintiff's fiancee twice, striking her on the arm and hand, following which he grabbed plaintiff from the ground and drove his knee sharply into plaintiff's chest. Id. at ¶¶ 15-16.

Defendants' articulation of the events contrasts sharply with that of plaintiff and his fiancee. Defendant Slaughter submits that while he was detaining plaintiff at the rear of the vehicle in a "lock hold" and handcuffs, Def.'s Stmt. at 3 ¶¶ 18, 22 -24, plaintiff resisted detention, repeatedly pushing up off the vehicle against defendant Slaughter's efforts, Def.'s Mot. Summ. J. at 5, 9. Plaintiff, Slaughter claims, instructed his fiancee to "help get [defendant Slaughter] off of him." Def.'s Mot. Summ. J. at 9. At that time, all three passengers simultaneously exited the vehicle, and defendant Slaughter yelled for Officer Mitchell to assist him. Def.'s Stmt. at 3-4 ¶¶ 24-26. According to Slaughter, he warned plaintiff's fiancee several times to back away, but she refused to comply with his requests and instead "charge[d]" at him. Def.'s Mot. Summ. J. at 10; Def.'s Stmt. at ¶¶ 27-29. Slaughter claims that he grabbed his ASP baton and held it up for plaintiff's fiancee to see, hoping to deter her from coming any closer, and only swung it when she refused to halt her approach. Id. at ¶¶ 29-32. Allegedly undaunted, plaintiff's fiancee continued forward, "attack[ing] and grab[bing] and push[ing]" Slaughter to the ground. Def.'s Mot. Summ. J. at 10. Defendant Slaughter swung the baton again, and plaintiff's fiancee grabbed it. Id. at ¶¶ 33, 34; Def.'s Mot. Summ. J. at 6. Slaughter acknowledges that Ms. Speaks was struck with the baton and ultimately suffered injuries to her hand and arm. Def.'s Stmt. at 4 ¶¶ 32, 35.

While plaintiff's fiancee was embroiled in conflict with him, Slaughter claims that plaintiff continued "trying to trip [him] up," causing him to fall to the ground. Def.'s Mot. Summ. J. at 10.

On his way down, defendant Slaughter struck plaintiff in the head with the baton. Id. By this time, one of the vehicle's other occupants had retrieved a book bag from the vehicle. Alone and fearing for his life, defendant Slaughter drew his weapon and commanded the individual to stop what he was doing. Def.'s Mot. Summ. J. at 10-11. The individual left the book bag on the ground and fled the scene. Id. at 10. When back-up assistance arrived, plaintiff and his fiancee were arrested for assaulting an officer. Plaintiff's fiancee was also charged with interfering with an officer while engaged in the performance of official duties.

Plaintiff filed this action on September 23, 2003, amending his complaint on December 12, 2003. Specifically, plaintiff alleges that: (1) all defendants deprived him of his Fourth and Fifth Amendment rights to due process and to be free from unreasonable searches and seizures, in violation of 42 U.S.C. § 1983 (Count I); (2) the District and defendant Slaughter are liable for assault and battery under the common law of the District because defendant Slaughter allegedly used excessive force (Count II); (3) the District and defendant Slaughter are liable for negligence under the common law of the District because defendant Slaughter allegedly used police equipment in a careless fashion (Count III); (4) all defendants are liable under the common law of the District for intentionally and/or negligently causing plaintiff to suffer severe emotional distress (Count IV); (5) the District and defendant Fitzgerald are liable for negligently training and failing to properly supervise defendant Slaughter (Count V); and (6) the District and defendant Fitzgerald are liable for establishing a pattern and practice of failing to discipline defendant Slaughter for violating policies and procedures established by the District and MPD (Count VI). Defendants have moved for summary judgment on all counts, arguing that plaintiff has failed to provide any evidence that a constitutional violation occurred, defendant Slaughter is entitled to qualified

immunity, plaintiff has failed to provide any evidence that the District had in effect any custom or policy that was the "moving force that caused injury to plaintiff," defendant Fitzgerald had no contact with plaintiff and played no role in his detention, and plaintiff failed to adequately comply with the requirements of notice set forth in D.C. CODE ANN. § 12-309.  The Court will address each of defendants' contentions in turn.

## LEGAL STANDARD

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56(c).  Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating that no genuine dispute of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-moving party's statements as true, and accept all evidence and make all inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Nevertheless, a non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position, id. at 252, although the moving party need only point to the absence of evidence proffered by the non-moving party,

Celotex, 477 U.S. at 322.  Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## ANALYSIS

I. *The District and Both Individual Defendants (in their Official Capacities) Are Entitled to Summary Judgment on Count I*

The District may be held liable under § 1983 only if the constitutional violations of which plaintiff complains were caused by a policy or custom of the District.  See Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978).   Plaintiff must first prove that such a policy or custom exists, by identifying, for example, a formal statute or regulation that is unconstitutional, or by showing an unconstitutional action or decision on the part of an official policymaker.  See id. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); see also Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).  Alternatively, plaintiff may point to an informal policy or custom that is unconstitutional by showing that the District or its official policymakers were deliberately indifferent to the persistent and pervasive unconstitutional misconduct of municipal employees or failed adequately to train or supervise such employees.  See City of Canton v. Harris, 489 U.S. 378, 388-89 & n.7 (1989); Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000); Rogala v. District of Columbia, 161 F.3d 44, 56 (D.C. Cir. 1998); Triplett v. District of Columbia, 108 F.3d 1450, 1453 (D.C. Cir. 1997); Carter v. District of Columbia, 795 F.2d 116, 124-26 (D.C. Cir. 1986).  Once the existence of the unconstitutional policy or practice is established, plaintiff must further prove that the policy or practice was the driving factor behind his constitutional injury -- i.e., that it caused plaintiff's harm. See Oklahoma City, 471 U.S. at 823.

Plaintiff has not carried his burden.  Specifically, the record identifies no formally-adopted policy or custom of the District of Columbia that is unconstitutional, and, as defendants note, the laws of the District explicitly criminalize the actions allegedly committed by defendant Slaughter. See D.C. CODE ANN. § 5-123.02; D.C. Muni. Regs. § 207.1.  Hence, plaintiff must prove that the District (or its official policymakers) was deliberately indifferent to defendant Slaughter's allegedly unconstitutional conduct, or failed adequately to train defendant Slaughter.  The record, however, does not support such a conclusion, as it is entirely devoid of any evidence tending to show that either the District or its official policymakers were aware of -- and chose to disregard -- defendant Slaughter's unconstitutional conduct on this or any other occasion.  Plaintiff has not described the training received (or allegedly not received) by defendant Slaughter, articulated how or why such training was inadequate, or submitted evidence of similar misconduct by defendant Slaughter or other MPD officers on other occasions.   The allegations against defendant Slaughter, without more, are insufficient to provide more than the "mere existence of a scintilla of evidence" on this point.  See Anderson, 477 U.S. at 255.  In sum, there is no evidence (direct or indirect) of a qualifying policy or procedure (formal or informal), or the requisite causal nexus, upon which to base municipal liability under Monell and Carter.  On summary judgment, it is not enough for the non-moving party simply to parrot the language and elements of the law, claiming that they are satisfied with respect to a particular defendant.  See id. at 255.  Accordingly, the District is entitled to summary judgment on Count I.[1]

---

[1]Defendants' summary judgment motion seized upon these deficiencies in the record, yet plaintiff's opposition papers are silent on the issue, which arguably provides an independent basis for treating defendants' arguments as conceded and dismissing plaintiff's claims as abandoned. See, e.g., Halmon v. Jones Lang Wootton USA, 355 F.Supp.2d 239, 245 (D.D.C. 1005) (citing Geller v. Randi, 40 F.3d 1300, 1304 (D.C. Cir. 1994)).

Moreover, summary judgment will be granted in favor of defendants Slaughter and Fitzgerald with respect to the § 1983 claims against them in their official capacities. The purpose of an official-capacity suit is to allow the plaintiff a means to procure relief from the municipality. See McMillian v. Monroe Cty., 520 U.S. 781, 785 n.2 (1997); see also, e.g., Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell, 436 U.S. at 690 n.55); Atchinson v. District of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996). Hence, when the law provides an avenue for recovery against the municipality (as Monell and Carter do here), official-capacity suits against municipal officers are redundant, see, e.g., Robinson v. District of Columbia, 403 F. Supp. 2d 39, 49-50 (D.D.C. 2005), and should suffer the same fate as identical suits against the municipality, Bridges v. Kelly, 977 F. Supp. 503, 505 n.4 (D.D.C. 1997). Because plaintiff's claim against the District does not clear the hurdles erected by Monell and Carter, the official-capacity action against defendants Fitzgerald and Slaughter suffers the same fate and does not afford him the proverbial "second bite at the apple" in order to recover from the District's pocket.

II. *Defendant Slaughter Is Not Entitled to Summary Judgment on Count I in his Personal Capacity*

In Count I, plaintiff challenges the manner of his arrest and the reasonableness of the level of force used by defendant -- he does not challenge the existence of probable cause to support the arrest. He bases his claim on two different constitutional rights -- the Fourth Amendment right to be free from unreasonable searches and seizures, and the Fifth Amendment right to substantive due process. The applicable legal test for both claims is the one used in the Fourth Amendment context, which requires the Court to consider whether defendant's actions were reasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest,

investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . rather than under a 'substantive due process' approach"); see also Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham, 490 U.S. at 395).  The Court must remain mindful of the fact that officers are called upon to make split-second decisions, and must judge from the perspective of a reasonable officer on the scene without resorting to the benefit of hindsight.  Graham, 490 U.S. at 392-94, 396-97.  It is well-established that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Saucier v. Katz, 533 U.S. 194, 209 (2001) (citing Graham, 490 U.S. at 396).  The key focus of the analysis centers on what an officer reasonably believed during the incident.  See, e.g., Young v. Scales, 873 A.2d 337, 337 (D.C. 2005); Powell v. Evans, 644 A.2d 1008 (D.C. 1994).  The reasonableness of an officer's beliefs, in turn, is most directly informed by the events themselves -- that is, the facts of the situation and the particularities of what transpired.

If, as defendant Slaughter contends, plaintiff was forcefully resisting arrest, otherwise behaving incorrigibly, and calling for his compatriots to assist him, and plaintiff's fiancee charged at, pushed, and attacked defendant Slaughter in order to disrupt or prevent the lawful arrest of plaintiff, then defendant Slaughter's use of the ASP baton to protect himself from bodily injury or death, maintain control of the situation, subdue plaintiff, and fend off plaintiff's fiancee -- at a time when he was without assistance or protection and threatened by four individuals -- would seem reasonable.  But if the events more closely track plaintiff's allegations, then a contrary conclusion may well be warranted.  It is difficult to conceive of how it could be reasonable for Slaughter to club a physically impaired, cooperative individual (who was handcuffed and restrained in a lock hold), knocking him unconscious and causing him to bleed "profusely," simply because he

inquired about the reason for his detention and shifted his position in an attempt to alleviate the pressure upon his pre-existing arm injury. The parties, then, have painted two very different portraits of the events that transpired, and those events form the core of plaintiff's action. Defendant does not contest the fact that plaintiff suffered a head injury, and admits to hitting plaintiff over the head with the ASP baton. It is also undisputed that Officer Miller left the scene before these events occurred and returned after they had ended, and that no other officers were on the scene at the time. Quite simply, this case comes down to the word of plaintiff and his fiancee weighed against that of defendant Slaughter.[2] To render a ruling on Count I, then, the Court would have to first make credibility determinations, choosing to believe one party over the other. Under such circumstances, summary judgment is not available. Anderson, 477 U.S. at 254 (stating that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). At this stage of the proceedings, all inferences must be drawn in plaintiff's favor, and the Court must assume that plaintiff's supported allegations are true. Id. at 255. Mindful of these standards, the Court cannot say that the evidence and allegations are inadequate to enable plaintiff to prevail under any set of circumstances. Rather, there are genuine issues of fact in dispute, the resolution of which is germane to a determination of whether defendant Slaughter violated plaintiff's Fourth and Fifth Amendment rights.

Defendant Slaughter argues that he is entitled to qualified immunity, but under the circumstances, that affirmative defense does not entitle him to summary judgment. Qualified

---

[2]Plaintiff has provided evidentiary support for his contentions, as he has submitted deposition testimony from himself and his fiancee; thus, the Court cannot deem plaintiff's allegations conclusory or bare.

immunity shields government officials, including police officers, from liability under § 1983 for actions taken while performing official, discretionary functions[3] as long as the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable officer would have known.  See, e.g., Wilson v. Layne, 526 U.S. 603, 609 (1999).  A two-part test applies, the first prong of which inquires whether plaintiff's allegations, if true, establish that defendant's conduct violated a constitutional or statutory right (here, the right to be free from unreasonable searches and seizures and the right to substantive due process).  Under the second prong, the Court must determine whether the right infringed was clearly established at the time of the violation, meaning that the contours of the right were sufficiently clear to enable a reasonable officer to know that his actions would violate it.  See Hope v. Pelzer, 536 U.S. 730, 739 (2002); United States v. Lanier, 520 U.S. 259, 270 (1997); Anderson v. Creighton, 483 U.S. 635, 640  (1987).

  The Court has already concluded that, if plaintiff's allegations are true, he may be able to convince a jury that defendant Slaughter violated his Fourth and Fifth Amendment rights.  Hence, the Court will move to the second part of the inquiry.  To determine whether the contours of those rights were sufficiently clear, the Court must, as defendant acknowledges, consider the right "in light of the specific context of the case, and not as a broad, general proposition." Saucier, 533 U.S. at 201.  Against the backdrop of a motion for summary judgment, the specific context of the case is provided by plaintiff's allegations and evidence.  The Court is confident that the contours of the Fourth and Fifth Amendment rights asserted by plaintiff were sufficiently clear on September 23, 2002 to enable a reasonable officer acting under the circumstances as plaintiff has described

---

[3] The parties agree that defendant Slaughter was performing his official duties, and that those duties are discretionary in nature.

them to know that using an ASP baton to club the head of a restrained, compliant individual with enough force to cause excessive bleeding and loss of consciousness would be unreasonable and thus would offend those rights.  Put another way, "the excessiveness of the force [allegedly used by defendant] is so apparent that [under the circumstances described by plaintiff] no reasonable officer could have believed in the lawfulness of [the level of force]."  Dimes-Smith v. District of Columbia, No. 04-7164, 2005 U.S. App. LEXIS 556 at *1 (D.C. Cir. Jan. 11, 2005).   Hence, the Court cannot conclude at this time that defendant Slaughter is entitled to prevail as a matter of law based upon the affirmative defense of qualified immunity -- that conclusion, like the determination whether defendant Slaughter violated plaintiff's rights, depends on the resolution of hotly contested issues of material fact.[4]

III.  *Defendant Slaughter Is Not Entitled to Summary Judgment on Counts II, III, and IV*[5]

Defendant Slaughter argues that because he is entitled to summary judgment on the § 1983 claim articulated in Count I, the Court lacks subject matter jurisdiction over the common law

---

[4]Defendant Slaughter contends that plaintiff has failed adequately to articulate a specific, narrow right that has been infringed beyond the broad and generalized right to be free from unreasonable searches and seizures.  The Court disagrees.  Plaintiff submits that Slaughter infringed his right to be free from the use of excessive force and the infliction of unwarranted injury during an arrest and seizure.  Such an allegation is neither generalized nor broad, and indeed is a frequent component of civil rights cases involving police-citizen confrontations.

[5]The Court does not construe the complaint to include claims against defendant Slaughter in his official capacity with respect to Counts II, III, and IV.  Assuming that the complaint clearly states such claims, defendant Slaughter is not an appropriate defendant in his official capacity.  As the Court explained supra in Part I, the purpose of an official-capacity suit is to provide a means of recovery from the municipality.  See McMillian, 520 U.S. at 785 n.2; see also, e.g., Graham, 473 U.S. at 165 (quoting Monell, 436 U.S. at 690 n.55); Atchinson, 73 F.3d at 424.  Because the law allows plaintiff to sue the District for these common law claims, any official-capacity claims against defendant Slaughter are redundant.  See Robinson, 403 F. Supp. 2d at 49-50; see also Bridges, 977 F. Supp. at 505 n.4.

claims in Counts II, III and IV.  That argument assumes that the Court has granted defendants' motion in full with respect to Count I, which the Court has not done.  Because the common law claims in Counts II, III, and IV arise from the same "common nucleus of operative fact" as the remaining claim in Count I, see United Mine Workers v Gibbs, 383 U.S. 715, 725 (1966), they are part of the same "case or controversy" under Article III and the supplemental jurisdiction statute, see 28 U.S.C. § 1367(a).  Hence, the Court retains supplemental jurisdiction over the common law claims.

Moreover, defendant Slaughter is not entitled to summary judgment based on the merits of those claims because the same genuine disputes of material fact that arise in connection with plaintiff's § 1983 claim likewise operate to preclude summary judgment with respect to the common law claims.  Specifically, plaintiff has alleged intentional and/or negligent infliction of emotional distress, assault, battery, and negligence.  To prove the tort of battery, plaintiff must establish that defendant Slaughter intended to touch him in a harmful or offensive fashion.  See Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993) (quoting Jackson v. District of Columbia, 412 A.2d 948, 955 (D.C. 1979)).  For assault, plaintiff must show that defendant intended and unlawfully attempted or threatened, either by words or by acts, to physically harm him.  See id. (citing Jackson, 412 A.2d at 955).  Police officers have a "qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'"  Id. (quoting Jackson, 412 A.2d at 955); see also Smith v. District of Columbia, 882 A.2d 778, 788 (D.C. 2005).  Although the standard for determining whether the contact is harmful or offensive is objective, the question of reasonable belief is not.   In ascertaining what constitutes a reasonable belief, the fact-finder must probe what

the particular officer knew and thought at the time he or she acted -- a standard that is essentially identical to the Fourth Amendment analysis. See Graham, 490 U.S. at 396-97 (stating that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). The identical facts are relevant to whether defendant Slaughter's use of the ASP baton was "extreme and outrageous" with respect to the intentional and negligent infliction of emotional distress claims, see Smith, 882 A.2d at 794 (quoting Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002)), and to whether the conduct fell short of the minimum standard of care that is expected of a reasonably prudent officer (thereby constituting negligence).

IV. *The District Is Not Entitled to Summary Judgment on Counts II, III, and IV*[6]

The District submits that plaintiff failed to comply with the requirements of D.C. CODE ANN. § 12-309, which requires a plaintiff suing the District for "damages to person or property" to provide the mayor with written notice within six months of the incident, describing "the approximate time, place, cause, and circumstances of the damage." Plaintiff met the timeliness requirements of § 12-309, as he provided written notice to the mayor just four months after the

---

[6]The District makes the same argument with respect to supplemental jurisdiction that defendant Slaughter has advanced -- that it is entitled to summary judgment on the common law claims in Counts II, III, and IV based upon the grant of summary judgment in connection with Count I. Again, the Court did not grant defendants' motion with respect to Count I in full, and the common law claims at issue here arise from the same "common nucleus of operative fact" and therefore constitute part of the same "case or controversy" under Article III. See 28 U.S.C. § 1367(a); Gibbs, 383 U.S. at 725. Hence, the Court retains supplemental (pendent party) jurisdiction over those claims. See § 1367(a) (stating that "in any civil action of which the district courts have original jurisdiction . . . [they] shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . [including] claims that involve the joinder or intervention of additional parties").

incident occurred. However, that notice identified September 25, 2003 as the date of the incident (rather than September 23, 2003), and described the location of the incident generally as "Kenyon Street, NW." According to the District, the requirements of § 12-309 are stringent, and plaintiff has deviated from them unacceptably. The Court, however, is not inclined to adopt such an unforgiving interpretation of the language of § 12-309. The provision's purpose is to provide the District with adequate time to prepare for an impending lawsuit and to investigate the incident without undue burden. See, e.g., Washington v. District of Columbia, 429 A.2d 1362, 1336 n.14 (D.C. 1981); Gaskins v. District of Columbia, 579 A.2d 719, 723 (D.C. 1990). Plaintiff's written notice was sufficient to further these twin goals, and it would indeed be inequitable if the courthouse doors were closed to plaintiff due to an inadvertent typographical error.

Nor is the Court prepared to hold that plaintiff's description of the location was insufficient -- the street name was correct, and he provided the relevant quadrant of the city. See Feirson v. District of Columbia, 315 F. Supp. 2d 52, 57 (2004) (stating that "§ 12-309's requirements with respect to the content of the notice . . . are to be interpreted liberally, and in close cases we resolve doubts in favor of finding compliance with the statute") (quoting Wharton v. District of Columbia, 666 A.2d 1227, 1230 (D.C. 1995)). His failure to pinpoint the precise address at which the altercation occurred is not material, particularly because -- by his account of the events -- it was a stressful and upsetting ordeal during which he suffered a head injury and lost consciousness, making it unlikely that he would have been able to commit a precise address on Kenyon Street to memory.[7]

---

[7] Because the Court concludes that plaintiff's § 12-309 notice was sufficient, it need not address the parties' alternative arguments regarding whether the police report constructively satisfied the statute under Allen v. District of Columbia, 533 A.2d 1259, 1262 (D.C. 1987).

V. *Defendant Fitzgerald (in his Official Capacity) and the District Are Entitled to Summary Judgment on Counts V and VI*

For many of the same reasons articulated in Part I, <u>supra</u>, plaintiff cannot survive summary judgment with respect to his claims against the District and defendant Fitzgerald in Counts V and VI. To begin with, plaintiff has not affirmatively identified any specific facts to support his contention that defendant Slaughter was negligently trained or supervised. Moreover, the record lacks any evidence of a pattern or practice of failing to discipline either defendant Slaughter or other MPD officers. Plaintiff has offered no facts to suggest that defendant Slaughter engaged in similar misconduct on other occasions, and nothing in the record indicates that the District or defendant Fitzgerald were aware of defendant Slaughter's alleged misconduct on this or any other occasion (or that, even if they were, they failed to discipline him). Aside from the general, conclusory, and bald assertions in plaintiff's Amended Complaint, there is simply nothing in the record that even remotely supports plaintiff's contentions. Hence, the District and defendant Fitzgerald are entitled to summary judgment on Counts V and VI.

VI. *Defendant Fitzgerald (in his Personal Capacity) Is Entitled to Summary Judgment on Count I, Count IV, Count V, and Count VI*

"[W]here responsibility is predicated on inattentiveness rather than affirmative misconduct, the plaintiff must establish a high degree of fault in order to implicate the supervisor in the constitutional infractions of his subordinates." <u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1261 (D.C. Cir. 1987). To hold defendant Fitzgerald personally liable for the allegedly unconstitutional actions of defendant Slaughter, then, plaintiff must "present evidence that [he] had an obligation to supervise or discipline [defendant Slaughter], that this duty was breached through 'gross negligence' or 'deliberate indifference' to the precautions necessary, and that this breach was the

proximate cause of the constitutional violations that occurred." See Robinson, 403 F. Supp. 2d at 50 (citing Haynesworth, 820 F.2d at 1260-61).  Plaintiff has fallen far short of this standard.  The record contains no indication, for example, that defendant Fitzgerald directed, participated in, or knew about the events that transpired on September 23, 2003; that he directed, participated in, or knew about other similar instances of subordinate misconduct; that he directed, participated in, or knew about the specific training (or lack thereof) provided to defendant Slaughter; that he was aware of any deficiency in the training of defendant Slaughter or other MPD officers; that he had any particular obligation to supervise or discipline defendant Slaughter; or that any alleged acts or omissions on the part of defendant Fitzgerald proximately caused the violation of plaintiff's constitutional rights.  Without such evidence, no reasonable jury could make a finding of gross negligence or deliberate indifference with respect to Count I.  These same factual and evidentiary deficiencies are also fatal to plaintiff's common law claims in Counts IV, V, and VI.

It is not sufficient merely to allege that defendant Fitzgerald is responsible for the "day-to-day implementation of" certain policies and procedures, or to generically describe his professional duties.   See Robinson, 403 F. Supp. 2d at 51-52.  In essence, plaintiff has done nothing more than name defendant Fitzgerald as a defendant, briefly describe his employment capacity, and summarily assert that he violated various laws and civil rights without identifying any specific acts, omissions, or incidents, or providing even a scintilla of evidence or factual support.  This may arguably be sufficient to clear the much lower hurdle of Fed. R. Civ. P. 8(a)'s "short and plain" liberal pleading requirements (and thereby preclude dismissal pursuant to Fed. R. Civ. P.

12(b)(6)), but it is not nearly adequate to survive summary judgment.[8]  See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252, 255; see also Holbrook, 196 F.3d at 259-60; Robinson, 403 F. Supp. 2d at 51-52.  Accordingly, summary judgment will be granted in favor of defendant Fitzgerald with respect to all claims against him in his personal capacity.

## CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion for summary judgment in part and deny it in part.  Specifically, summary judgment will be granted in favor of the District with respect to Counts I, V, and VI; in favor of defendant Fitzgerald in his official capacity with respect to Counts I, V, and VI; in favor of defendant Fitzgerald in his personal capacity with respect to Counts I, IV, V, and VI; and in favor of defendant Slaughter in his official capacity with respect to Counts I, II, III, and IV.  The motion is denied with respect to the allegations in Counts II, III and IV against the District, and with respect to the allegations in Counts I, II, III, and IV against defendant Slaughter in his personal capacity.  A separate order has been issued on this date.

        /s/   John D. Bates  
        JOHN D. BATES  
        United States District Judge

Dated:   April 6, 2006

*Copies to*:

Donald M. Temple

---

[8] Here again, defendants' motion for summary judgment alerted plaintiff to this deficiency, but plaintiff never responded to these arguments and did not so much as mention defendant Fitzgerald in his opposition papers.

TEMPLE LAW OFFICE
1229 15th Street, NW
Washington, DC 20005
(202)628-1101
Fax: (202)628-1149
Email: TemplePC@aol.com

Jeanett P. Henry
HENRY & MADDOX, LLC
8701 Georgia Avenue
Suite 403
Silver Spring, MD 20910
(301) 562-1340
Email: jhenry2085@aol.com

*Counsel for plaintiff*

Theresa Ann Rowell
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division, Section I
441 4th Street,NW
6th Floor South
Washington, DC 20001
(202) 724-6539
Fax: (202) 724-6013
Email: Theresa.Rowell2@dc.gov

Monique Daniel Pressley
D.C. OFFICE OF CORPORATION COUNSEL
441 4th Street, NW
Washington, DC 20001
(202) 724-6594
Fax: (202) 727-0431
Email: robert.deberardinis@dc.gov

*Counsel for defendants*